UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:19-CR-00061 JD |
| ) | |
| NATHAN KEOSACKDY ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant, Nathan Keosackdy ("Keosackdy"), is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). [DE 1]. Keosackdy has moved to suppress his statement, which was taken by law enforcement agents on May 8, 2019, because he asserts that he asked for an attorney during a custodial interrogation and that the agents should have ceased questioning immediately after his unequivocal request for counsel [DE 13].[1]

The defendant's Motion to Suppress [DE 13] is before me, the undersigned Magistrate Judge, having been referred by an Order [DE 14] of the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B), Fed. R. Crim. P. 59(b)(1), and N.D. Ind. L.R. 72-1.

I held an evidentiary hearing on the defendant's motion to suppress on January 14, 2020 [DE 39]. At the hearing, the Government moved for admission of Government's Exhibit 1, which contained the videotaped statement of the Defendant on May 8, 2019.

---

[1] Of course, if the agents continued to question Keosackdy following an unambiguous request for counsel, any statements that he made thereafter should be suppressed based on *Edwards v. Arizona*, 451 U.S.477 (1981) and its progeny.

The defendant did not object to the admission of the videotape for the purpose of the hearing, and the Court admitted the videotape for the limited purpose of consideration and disposition of the Defendant's motion to suppress.

At the conclusion of the hearing, I took the instant motion under advisement. For the reasons stated herein, I RECOMMEND the defendant's motion to suppress be GRANTED, in part, and DENIED, in part.

## II.  Relevant Facts and Inferences

Before issuing this report and recommendation, I have considered the briefs of the parties, the evidence presented, and the video of the custodial interrogation of the Defendant Keosackdy. The following facts were contained in the record before this court:

On May 8, 2019, Keosackdy was arrested due to an active warrant. Following Keosackdy's arrest, he was interviewed by Rodney Laureys ("Laureys"), a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Cpl. Christopher Faigh of the Elkhart Police Department was also present for the interview.

Keosackdy was escorted to an interview room (Gov. Ex. 1 at 04:34:00), where he waited for approximately 58 minutes before the investigators began the interview (Id. at 05:32:31).  At the beginning of the interview, TFO Laureys introduced himself to Keosackdy (Id. at 05:32:58).  TFO Laureys explained that Keosackdy's name came up in relation to a case that Laureys was investigating and that he had some questions about a specific gun (Id. at 05:33:52).  Laureys then proceeded to read *Miranda*[2] rights to Keosackdy.[3] (Id. at 05:34:08).  Keosackdy was asked if he understood the rights that had

---

[2] *Miranda v. Arizona*, 384 U.S.436 (1966) (an individual must be advised of certain federal Constitutional rights when subjected to custodial interrogation).
[3] TFO Laureys read the following version of the *Miranda* warnings to Keosackdy:

2

been read to him, and he said he understood his rights and nodded in support of his verbal response (Id. at 05:34:30).

In explaining the purpose and nature of his investigation, TFO Laureys told Keosackdy that he was trying to locate a specific firearm – a pistol (Id. at 05:34:55). He explained that this pistol had been used in a shooting (Id. at 05:36:49). He also indicated that he had tracked the pistol back to Keosackdy (Id. at 05:38:57). He stated that his investigation had revealed that the pistol was purchased at Big R (Id. at 05:39:29), and had been shot in Michigan (Id. at 05:39:41), and that ATF technicians had retrieved a bullet that had been fired from the pistol (Id. at 05:39:45). At this point in the interview, Laureys encouraged Keosackdy to cooperate so that investigators could locate the firearm (Id. at 05:39:54). Laureys specifically asked for Keosackdy's help in retrieving the weapon (Id. at 05:49:07) and emphasized that Keosackdy could help himself by doing so (Id. at 05:41:11).

In response, Keosackdy indicated that he "has some questions" (Id. at 05:41:41). Keosackdy then asked were the pistol was shot in Michigan (Id. at 05:41:44). TFO Laureys responded that he did not know exactly because his technicians had retrieved the bullet (Id. at 05:41:47). Keosackdy then stated, "Well, I don't have a gun" (Id. at 05:41:52). Laureys replied, "I believe you" (Id. at 05:41:53). Keosackdy then offered "I don't know

---

- You have the right to remain silent. Anything you say can and will be used against you in a court of law.
- You have the right to talk to a lawyer for advice before we ask you any questions and have him with you during questioning.
- If you cannot afford to hire a lawyer, one will be appointed for you before any questioning
- If you decide to answer questions now without a lawyer present, you can, that is fine, but you will still have the right to stop answering questions at any time.
- You also have the right to stop answering questions at any time until you talk to your attorney.

(Gov. Ex. 1 at 05:34:08-28).

3

who has the gun, and I don't know that person's name" (Id. at 05:41:56). Laureys replied, "I believe you…I believe you" (Id. at 05:42:04) and stated that part of the interview was to determine if Keosackdy was being truthful or untruthful (Id. at 05:42:20). At that point, Keosackdy insisted, "I'm being truthful; I don't know who has the gun" (Id. at 05:42:23). Laureys then asked Keosackdy how he got the gun in the first place (Id. at 05:42:31). At this juncture, Keosackdy stated, "Well, for one, I'd like to plead my Fifth Amendment and wait 'til I get a lawyer before I answer any questions" (Id. at 05:42:39).

Following his request for counsel, TFO Laureys and Keosackdy engaged in some additional dialogue – Laureys indicated that invoking the right to counsel was not helping Keosackdy's situation and Keosackdy asked additional questions about possible charges, but interspersed throughout this discussion Keosackdy periodically reasserted that he wanted to speak with a lawyer (Id. at 05:42:39 – 05:46:53).

Keosackdy now moves to suppress the statements made during his custodial interview, claiming that the investigators failed to halt questioning after he made a request for an attorney.

### III.  Discussion and Analysis

The Fifth Amendment to the United States Constitution guarantees that no person shall "be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law…." U.S. Const. amend. V. The Fifth Amendment "[p]rotects a person only against being incriminated by his own compelled testimonial communications." *Doe v. United States*, 487 U.S. 201, 2017 (1988). Due process requires that when a person is taken into custody, he must be advised of these rights before being subjected to interrogation. *Miranda v. Arizona,* 384

4

U.S.436 (1966). In *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), the U.S. Supreme Court held that investigators must immediately cease questioning of a subject who clearly asserts his right to have counsel present during a custodial interrogation.

"If the suspect effectively waives his right to counsel after receiving Miranda warnings, law enforcement officers are free to question him," however, "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *Edwards*, 451 U.S. at 484-85). A waiver of *Miranda* rights may be express or implied. *United States v. Brown,* 664 F.3d 1115, 1118 (7th Cir. 2011). Waiver may be implied by a person's action; it is not necessary for a person to sign a waiver form in order to waive *Miranda*. *Id.* An implied waiver must be made voluntarily and must be the free and deliberate choice of the person being interviewed. *Id.* (citing *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010)). A finding of voluntariness is dependent upon "the defendant's age and education, his experience with law enforcement, and the length and condition of the interview. *Id.* (citing *Brown*, 664 F.3d at 1118; *United States v. Shabazz*, 579 F.3d 815, 820 (7th Cir. 2009)).

Here, following the verbal *Miranda* warning, Keosackdy acknowledged that he understood his rights. While Keosackdy did not sign a *Miranda* waiver form, he did ask TFO Laureys some questions and responded to comments made by Laureys. At this initial stage of the interview, TFO Laureys had explained the nature and the general purpose of the interview, and Laureys had not threatened or harassed Keosackdy. Likewise, Keosackdy was cooperative and engaged, and repeatedly stated that he was being truthful with TFO Laureys. At the time of the interview, Keosackdy was 20 years

old, was the father of a two-year old child, and had been employed on full-time basis from 2017 until his arrest in 2019 (D.E. 10, p. 1-2). Moreover, at the time of the interview, Keosackdy was familiar with the criminal justice system because he had consistent contact with the court system since age 15 (D.E. 10, p. 3-4). While Keosackdy was in the interview room for approximately one hour and fifteen minutes, the actual interview only lasted about sixteen minutes. Based on the factors relevant to determine the voluntariness of an oral *Miranda* waiver, none of the factors indicate that Keosackdy was coerced or forced into waiving his rights, and that the interview produced a voluntary waiver at its initial stage.

At this point in time, Keosackdy makes three voluntary statements to TFO Laureys:

- "Well, I don't have a gun" (Gov't Ex. 1 at 05:41:52);
- I don't know who has the gun, and I don't know that person's name" (Id. at 05:41:56).
- "I'm being really truthful; I don't know who has the gun" (Id. at 05:42:23).

After making about three voluntary statements, Keosackdy indicates that he wants to invoke his rights under the Fifth Amendment to the U.S Constitution. Of course, in *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), the U.S. Supreme Court held that investigators must immediately cease questioning of a subject who clearly asserts his right to have counsel present during a custodial interrogation. Once a subject unambiguously invokes his right to counsel, then all questioning should stop until counsel is made available or until the subject reinitiates communication. *Davis*, 512 U.S. at 459; *United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013). Here, the defendant told TFO Laureys, "[w]ell, for one I would like to plead my Fifth Amendment and wait 'til I get a lawyer to answer any questions." (Gov't Ex. 1 at 05:42:34).

6

As noted by the U.S. Supreme Court, the "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis,* 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). Where the subject of a custodial interrogation clearly requests counsel, any statement made after such a request and before counsel was provided (or communication was reinitiated by the subject) would be inadmissible. *United States v. Martin*, 664 F.3d 684, 688 (7th Cir. 2011). The purpose behind prohibiting further questioning and excluding statements made following invocation of the right to counsel is to prevent police coercion. *Id.* at 689.

A statement is sufficient to invoke the right to counsel if it indicates "a certain and present desire to consult with counsel." *Hunter,* 708 F.3d at 943. Based on Seventh Circuit precedent, a court should look for words like "can," which reflect a present intent to obtain counsel, rather than words like "should" or "might," which suggest uncertainty about a present desire for a lawyer. *Id.* Compare *United States v. Wysinger*, 683 F.3d 784, 790 (7th Cir. 2012) ("I mean, but can I call [a lawyer] now?") and *United States v. Lee,* 423 F.3d 622, 624 (7th Cir. 2005) ("Can I have a lawyer?") with *Davis*, 512 U.S. at 455 ("Maybe I should talk to a lawyer"), *Shabazz,* 579 F.3d at 818 ("[A]m I going to be able to get an attorney?"), and *United States v. Thousand*, Case No. 12-CR-110, 2003 WL 12099113 at *4 (W.D. Wis. June 13, 2013) ("I think I need a lawyer, I don't know, but I want to cooperate and talk").

In the present case, Keosackdy told TFO Laureys that he wanted to invoke his right to remain silent and to wait to answer any more questions until he spoke with a lawyer. At this point in the interview, Keosackdy made an unequivocal request for

7

counsel, which would require the cessation of questioning under *Edwards* doctrine. As such, any statements made by Keosackdy after he made that unequivocal request for an attorney should be suppressed.

However, the three voluntary statements (delineated at page 6, *infra*.) that Keosackdy made to TFO Laureys after Keosackdy had acknowledged his *Miranda* rights, but prior to his request for counsel, should *not* be suppressed and should be admissible. As such, the motion to suppress as applied to the voluntary statements made to investigators before Keosackdy invoked his right to counsel should be denied.

## Conclusion

For the reasons stated herein, I **RECOMMEND** defendant's Motion to Suppress [DE 13] be **GRANTED, in part**, and **DENIED, in part**.

Dated: January 21, 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge

**NOTICE:** Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *United States v. Hall,* 462 F.3d 684, 689 (7th Cir. 2006) ("When a right is waived, it is not reviewable, even for plain error"). Only specific objections are reserved for appellate review. *Lockert v. Faulkner*, 843 F.2d 1015, 1018 (7th Cir. 1988); *United States v. Harris,* 470 F. App'x 504, 506 (7th Cir. 2012).