UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Case No. 3:19-CR-061 JD-MGG |
| | ) | |
| NATHAN KEOSACKDY | ) | |

## OPINION AND ORDER

Defendant Nathan Keosackdy is being charged with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). [DE 1]. Mr. Keosackdy moved to suppress his statement made to law enforcement agents because he asserts that he unequivocally requested an attorney during a custodial interrogation and the agents should have ceased questioning immediately. [DE 13].

Upon a referral, the magistrate judge held an evidentiary hearing and issued a report and recommendation, recommending that the motion be granted, in part, and denied, in part. Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), when a magistrate judge conducts an evidentiary hearing and submits proposed findings of fact and recommendations, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See also* Fed. R. Crim. P. 59(b)(3); N.D. Ind. L.R. 72-1.

Here, the government filed no objection within fourteen days as required by Fed. R. Crim. P. 59(b)(2) and Mr. Keosackdy filed a notice of no objection. [DE 41]. The district court reviews a magistrate judge's recommendations to which there have been no objections using a clear error or contrary to law standard. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The clear error standard means that the

1

court will overturn the magistrate judge's ruling only if it is "left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir.1997).

On May 8, 2019, Mr. Keosackdy was arrested due to an active warrant. Following his arrest, he was interviewed by several law enforcement agents. Once the interview began, Mr. Keosackdy was read his *Miranda* rights. *Miranda v. Arizona*, 384 U.S.436 (1966) (an individual must be advised of certain federal Constitutional rights when subjected to custodial interrogation). Mr. Keosackdy indicated that he understood his rights verbally and nodded. (Gov. Ex. 1 at 05:34:08-05:34:30). The agents then told Mr. Keosackdy various details about the firearm and the factual circumstances linking him to the firearm. [DE 40, at 3].

After asking some questions, Mr. Keosackdy made several statements to the agents. [DE 40, at 3-4]; (Gov. Ex. 1 at 05:41:52-05:42:3). Mr. Keosackdy then stated, "[w]ell, for one, I'd like to plead my Fifth Amendment and wait 'til I get a lawyer before I answer any questions." (Gov. Ex. 1 at 05:42:39). Following his request for counsel, the agents engaged in some additional dialogue with Mr. Keosackdy. They told him that invoking his right to counsel was not helping his situation to which Mr. Keosackdy responded with additional questions about possible charges. However, throughout this part of the discussion, Mr. Keosackdy periodically reasserted his desire for a lawyer. After his fourth request for counsel, the interrogation ended. [DE 13, at Ex. A].

Mr. Keosackdy's motion to suppress arises under the Fifth Amendment of the United States Constitution which prohibits compelled self-incrimination, guaranteeing that no person shall "be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. V. The Fifth

Amendment "protects a person only against being incriminated by his own compelled testimonial communications." *Doe v. United States*, 487 U.S. 201, 207 (1988). Due process requires that when a person is taken into custody, he must be advised of these rights before being subjected to interrogation. *Miranda*, 384 U.S. at 444-45.

After Mr. Keosackdy was read his *Miranda* rights and indicated he understood them, he implicitly waived them once he responded to and asked the agents questions. *United States v. Brown*, 664 F.3d 1115, 1118 (7th Cir. 2011) (holding waiver may be implied by a person's actions if they are the free and deliberate choice of the suspect). The agents did not threaten or harass Mr. Keosackdy and he was cooperative and engaged with the agents, repeatedly stating that he was being truthful. At the time of the interview, Mr. Keosackdy was 20 years old, the father of a two-year old child, and had been employed full-time for two years. [DE 10, at 1-2]. Additionally, Mr. Keosackdy was familiar with the criminal justice system due to his previous experiences starting as a juvenile. [DE 10, at 3-4]. The actual interview only lasted about sixteen minutes. Based on all these factors, the Court finds no clear error in the magistrate judge's finding that Mr. Keosackdy's implied *Miranda* waiver and the subsequent initial statements, were voluntarily. *Brown*, 664 F.3d at 1118. ("Courts evaluate the voluntary nature of a defendant's actions in the context of his age, experience, education, background, intelligence, the length of questioning and other circumstances."). Therefore, the Court denies the motion to suppress the following voluntary statements made by Mr. Keosackdy:

- "Well, I don't have a gun" (Gov. Ex. 1 at 05:41:52);
- "I don't know who has the gun, and I don't know that person's name" (*Id.* at 05:41:56).
- "I'm being really truthful; I don't know who has the gun" (*Id.* at 05:42:23).

After these statements were made, Mr. Keosackdy asked for a lawyer. In *Edwards* and its progeny, the Supreme Court established that when an accused person invokes his or her right to

3

counsel during a custodial interrogation, all questioning must cease until counsel is made available or the accused himself initiates communication with law enforcement. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013). A statement is sufficient to invoke the right to counsel if it indicates "a certain and present desire to consult with counsel." *Hunter*, 708 F.3d at 943. Where the subject of a custodial interrogation clearly requests counsel, any statement made after such request by the subject before counsel was provided, or communication was reinitiated by the subject, is inadmissible. *Edwards*, 451 U.S. at 487.

Here, Mr. Keosackdy told the agents "[w]ell, for one I would like to plead my Fifth Amendment and wait 'til I get a lawyer to answer any questions." (Gov't Ex. 1 at 05:42:34). Consistent with the Seventh Circuit precedent, as detailed in the report and recommendation, the Court finds that this statement is an unambiguous and unequivocal request for counsel. The Court finds no clear error in the report and recommendation's finding that the questioning of Mr. Keosackdy should have ceased due to this unequivocal request as required by *Edwards*, and therefore the statements made after the invocation should be suppressed.

## CONCLUSION

For those reasons, the Court **ADOPTS** the Report and Recommendation [DE 40], and **GRANTS,** in part, and **DENIES,** in part the Defendant's motion to suppress [DE 13].

SO ORDERED.

ENTERED:  February 11, 2020

                                          /s/ JON E. DEGUILIO
                                     Judge
                                     United States District Court